IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION


UNITED STATES OF AMERICA                    PLAINTIFF/RESPONDENT

         V.              Case No. 3:14-CR-30006-PKH-MEF-5

ANDREW CRANE                                DEFENDANT/PETITIONER


**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Before the Court is the Defendant/Petitioner's Motion Under 28 U.S.C. § 2255 to Vacate,

Set Aside, or Correct Sentence by a Person in Federal Custody filed on September 14, 2016. (Doc.

165) The United States filed its response on October 12, 2016. (Doc. 168) Defendant/Petitioner

filed a reply on November 4, 2016. (Doc. 169) The matter is ready for report and recommendation.

### I. Background

On May 7, 2014, Defendant/Petitioner, Andrew Crane ("Crane"), was named in a multi-

defendant Indictment charging him with conspiracy to distribute methamphetamine (Count One).

(Doc. 1) Crane was arrested on June 2, 2014, and he appeared for arraignment before the Hon.

James R. Marschewski, Chief United States Magistrate Judge, on June 2, 2014, at which time he

entered a not guilty plea to the Indictment. (Doc. 40) Barry D. Neal ("Neal"), a CJA Panel attorney,

was appointed to represent Crane. (Docs. 40, 44)

On September 18, 2014, Crane appeared with counsel before the Hon. Robert T. Dawson,

United States District Judge, for a change of plea hearing. (Doc. 74) A written Plea Agreement was

presented to the Court, and Crane pleaded guilty to Count One of the Indictment charging him with

-1-

conspiracy to distribute methamphetamine.  (Docs. 74, 75)  The Court accepted the plea and ordered a Presentence Investigation Report ("PSR").  (Doc. 74)

An initial PSR was prepared by the United States Probation Office on January 23, 2015. (Doc. 89)  On February 9, 2015, the Government advised that it had no objections to the PSR.  (Doc. 95)  Also on February 9, 2015, Crane submitted two objections to the initial PSR: the first objecting to the calculation of drug quantity attributable to Crane and the resulting Base Offense Level; and, the second objecting to a specific offense characteristic enhancement for a pattern of criminal conduct engaged in as a livelihood.  (Doc. 96)

On February 23, 2015, a final PSR was submitted to the Court.  (Doc. 108)

In response to Crane's objection concerning the calculation of drug quantity, U. S. Probation reported that based on statements made by Crane in post-Miranda interviews, as well as statements made by others involved in the conspiracy, the drug quantity calculation of one pound of methamphetamine per week from both Antonio Howell and "the Colombian" over a two year period was correct.  U. S. Probation noted that the initial PSR actually underestimated the drug quantity – incorrectly using 52 weeks instead of 104 weeks – but that the corrected drug quantity did not affect the advisory Guidelines range.  (Doc. 108-1, p. 2)

In response to Crane's objection to the enhancement for committing the offense as part of a pattern of criminal conduct engaged in as a livelihood, U. S. Probation reported that Crane was unemployed from February 22, 2011 to about June, 2013; that bank records from September 17, 2012 to September 17, 2013 indicated there were $50,055.64 in deposits, of which none were from regular payroll accounts; and, that based on Crane's own statements, he lived with others involved in the drug conspiracy.  No changes were made to the PSR.  (Doc. 108-1, p. 2)

-2-

The final PSR determined that Crane was accountable for 94.34 kilograms of methamphetamine mixture. (Doc. 108, ¶¶ 27, 28, 64)  As a result, Crane's Base Offense Level was determined to be 38[1].  (Doc. 108, ¶ 70)  This was increased two levels, pursuant to U.S.S.G. § 2D1.1(b)(15)(E), as the offense was committed as part of a pattern of criminal conduct engaged in as a livelihood.  (Doc. 108, ¶ 71)  Further, a three-level increase was assessed, pursuant to U.S.S.G. § 3B1.1(b), since Crane was a manager or supervisor (of three others), and the criminal activity involved five or more participants or was otherwise extensive.  (Doc. 108, ¶ 73)  These adjustments resulted in an Adjusted Offense Level of 43.  (Doc. 108, ¶ 75)  After a three-level reduction for acceptance of responsibility, Crane's Total Offense Level was determined to be 40.  (Doc. 108, ¶¶ 77-79).  Crane had a criminal history score of 14, placing him in Criminal History Category VI[2].  (Doc. 108, ¶ 93)  The statutory maximum term of imprisonment for the offense of conviction is 20 years.  (Doc. 108, ¶ 116)  Based upon a Total Offense Level of 40 and a Criminal History Category of VI, Crane's advisory Guidelines range was determined to be 360 months to life imprisonment; however, the statutory maximum sentence is less than the maximum for the Guidelines range, so the advisory Guidelines range was adjusted to 300 months imprisonment[3].  (Doc. 108, ¶ 117)

Crane appeared for sentencing on March 17, 2015.  (Doc. 140)  The Court made inquiry that

[1] The PSR also noted that Crane met the qualifications for a career offender pursuant to U.S.S.G. § 4B1.1; however, the offense level from the drug quantity was greater than the offense level in the career offender guideline.  (Doc. 108, ¶ 70 n. 3)

[2] The PSR again noted that Crane met the criteria for a career offender, and that a career offender's criminal history category in every case shall be category VI pursuant to U.S.S.G. § 4B1.1(b).  (Doc. 108, ¶ 94)

[3] Crane was also indicted in Case No. 3:14-cr-30017-RTD-1, and he pleaded guilty to travel in interstate commerce to aid drug trafficking.  The PSR noted the statutory maximum term of imprisonment for that offense was five years.  (Doc. 108, ¶ 116)

Crane was satisfied with his counsel; the PSR was reviewed and adopted; a nine-level downward departure was granted; Crane and his counsel were afforded the opportunity to speak and make a statement; and, the Court then imposed a below-guidelines sentence of 188 months imprisonment, three years supervised release, no fine, and a $100.00 special assessment. (Doc. 140) Judgment was entered by the Court on March 19, 2015. (Doc. 154)

Crane did not pursue a direct appeal from the Judgment.

On September 14, 2016, Crane filed his *pro se* Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (the "motion"). (Doc. 165) The motion argues that Crane was deserving of consideration for a mitigating role adjustment at sentencing. (Doc. 165, pp. 4, 15-17)

The United States' response to the motion was filed on October 12, 2016. (Doc. 168) Crane filed a reply on November 4, 2016. (Doc. 169)

## II. Discussion

"A prisoner in custody under sentence . . . claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). "If the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner

-4-

or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b). A thorough review of Crane's motion and the files and records of this case conclusively shows that Crane is not entitled to relief, and the undersigned recommends the denial and dismissal of his motion with prejudice without an evidentiary hearing.

## A. Timeliness

The United States first contends that Crane's motion should be dismissed as untimely. (Doc. 168, pp. 4-6) The undersigned agrees.

A one year period of limitation applies to motions under 28 U.S.C. § 2255. This period runs from the latest of: (1) the date on which the judgment of conviction becomes final; (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action; (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or, (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence. 28 U.S.C. § 2255(f).

An un-appealed criminal judgment becomes final when the time for filing a direct appeal expires. *Anjulo-Lopez v. United States*, 541 F.3d 814, 816 n. 2 (8th Cir. 2008). The Judgment in this case was entered on March 19, 2015. (Doc. 154) Had Crane wished to file an appeal, he was required to do so within 14 days. *See* Fed. R. App. P. 4(b)(1)(A)(i). Crane did not file an appeal, and his conviction thus became final on April 2, 2015. *See Murray v. United States*, 313 Fed. App'x 924 (8th Cir. 2009). From that date, Crane had one year, or until April 2, 2016, to timely file his §

2255 habeas petition.  Crane filed his § 2255 motion on September 14, 2016, well beyond the one

year limitations period.

Timeliness is crucial to the consideration of a motion made under § 2255.  *See, e.g., Alsup*

*v. United States*, No. 09-3266-CV-S-RED, 2010 WL 376990, at pp. 2-3, (W.D. Mo. Jan. 26, 2010)

(unpublished), in which the Government's motion to dismiss petitioner's § 2255 motion was granted

where the motion was filed *one day* out of time.  "Foreclosing litigants from bringing their claim

because they missed the filing deadline by one day may seem harsh, but courts have to draw lines

somewhere, statutes of limitation protect important social interests (internal citation omitted), and

limitation periods work both ways - you can be sure [defendant] would not be pooh-poohing the

prosecution's tardiness if he had been indicted one day after the statute of limitations expired for his

crimes."  *See United States v. Marcello*, 212 F.3d 1005, 1010 (7th Cir. 2000).  Here, of course, we

are not dealing with Crane missing the limitations deadline by one day, but by more than five

months. Consequently, unless either statutory or equitable tolling applies, Crane's § 2255 motion

was not timely filed and should be summarily dismissed.

## 1. Statutory Tolling

The one year period within which to file a § 2255 motion may, in an appropriate case, begin

on the date on which an impediment to making a motion created by governmental action in violation

of the Constitution or laws of the United States is removed, if the movant was prevented from

making a motion by such governmental action; from the date on which the right asserted was initially

recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and

made retroactively applicable to cases on collateral review; or, from the date on which the facts

supporting the claim or claims presented could have been discovered through the exercise of due

diligence.  28 U.S.C. § 2255(f)(2-4).  Crane's § 2255 motion asserts that Amendment 794 to U.S.S.G. § 3B1.2 was "not available at that time," and that his filing is timely pursuant to 28 U.S.C. § 2255(f)(3).  (Doc. 165, pp. 5, 12, 16)

The problem with Crane's argument, however, is § 2255(f)(3) requires that the right asserted be initially recognized *by the Supreme Court*, and that the newly recognized right be *made retroactively applicable to cases on collateral review* by the Supreme Court.  Neither of those requirements is met in this case.  Amendment 794 to U.S.S.G. § 3B1.2, effective on November 1, 2015, is merely a clarifying amendment – it is not a newly announced substantive right recognized by the Supreme Court.  Further, *United States v. Quintero-Leyva*, 823 F.3d 519, 523 (9th Cir. 2016), cited by Crane, confirmed that Amendment 794 was intended to be a clarifying amendment and applies retroactively *only to cases on direct appeal*.

Accordingly, there is no basis to find that § 2255(f)(3) applies to this case to extend the one year limitations period beyond the date when the judgment of conviction became final. Unless equitable tolling applies, Crane's § 2255 motion was not timely filed and should be dismissed.

## 2. Equitable Tolling

The Eighth Circuit has held that the doctrine of equitable tolling is available to a § 2255 movant, but only "under limited conditions, for example, where extraordinary circumstances beyond a prisoner's control prevent the timely filing."  *See Gassler v. Bruton*, 255 F.3d 492, 495 (8th Cir. 2001); *United States v. Martin*, 408 F.3d 1089, 1092 (8th Cir. 2005).  The use of equitable procedures should be infrequent, *see Flanders v. Graves*, 299 F.3d 974, 976 (8th Cir. 2002), and will not be applied if the habeas movant has not diligently pursued his rights, *see Finch v. Miller*, 491 F.3d 424, 427 (8th Cir. 2007).  "Equitable tolling is an exceedingly narrow window of relief."

*Maghee v. Ault*, 410 F.3d 473, 476 (8th Cir. 2005).

Crane has not alleged that any extenuating circumstances beyond his control prevented a timely filing, nor has he even asserted the doctrine of equitable tolling. He does not claim that some Government action made it impossible or difficult for him to uncover the facts that he now asserts in support of his claims. He does not allege that the Government somehow lulled him into inaction. He does not refer to any extraordinary circumstances, attributable to the Government or to any other external cause, that prevented him, in the exercise of reasonable diligence, from discovering the facts upon which his claims are based soon enough to enable him to bring a timely habeas petition.

In sum, Crane fails to allege any extraordinary circumstances beyond his control that prevented him from timely filing his § 2255 motion. Nor has Crane shown that he exercised due diligence in the pursuit of his rights. After more than five months passed beyond the one year limitations period to file his § 2255 motion, he now asserts a claim that could have, and should have, been raised prior to his sentencing. In doing so, he alleges no new facts that would explain a delay in bringing his claim. He has, therefore, failed to allege and establish any factual basis to fit within the "exceedingly narrow window of relief" that equitable tolling provides, and his § 2255 motion should be dismissed as untimely.

### B.  Crane's Guidelines Claim is Procedurally Defaulted

Even if there had been an entitlement to a mitigating role adjustment, Crane cannot raise the issue for the first time in a § 2255 motion.

The United States Supreme Court has "long and consistently affirmed that a collateral challenge may not do service for an appeal." *United States v. Frady*, 456 U.S. 152, 165, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982) (internal citations omitted). Relief under § 2255 "is reserved for

transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and, if uncorrected, would result in a complete miscarriage of justice." *United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996). The circumstances under which a guilty plea may be attacked on collateral review are strictly limited, and "[i]t is well settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked." *Mabry v. Johnson*, 467 U.S. 504, 508, 104 S.Ct. 2543, 81 L.Ed.2d 437 (1984). Even the voluntariness and intelligence of a guilty plea can be attacked on collateral review *only* if first challenged on direct review, as "[h]abeas review is an extraordinary remedy and 'will not be allowed to do service for an appeal.'" *Bousley v. United States*, 523 U.S. 614, 621, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998) (internal quotation marks and citation omitted). "[T]he concern with finality served by the limitation on collateral attack has special force with respect to convictions based on guilty pleas." *Id*.

In this case, Crane pleaded guilty and did not pursue any relief on direct appeal. By failing to appeal, Crane procedurally defaulted the Guidelines claim he now raises.

This procedural default may be excused only if Crane "can show both (1) a cause that excuses the default, and (2) actual prejudice from the errors that are asserted." *Matthews v. United States*, 114 F.3d 112, 113 (8th Cir. 1997) (quoting *Bousley v. Brooks*, 97 F.3d 284, 287 (8th Cir. 1996)); *Apfel*, 97 F.3d at 1076; and, *Frady*, 456 U.S. at 167-68. "For cause to exist, the external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim." *McCleskey v. Zant*, 499 U.S. 467, 497, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991).

Crane makes no such showing here. He fails to demonstrate how the factual or legal basis

for his claim was not reasonably available to him in time to pursue relief on direct appeal.  Defense counsel made an objection to the drug quantity attributed to Crane in the PSR.  (Doc. 96, pp. 1-3)  Defense counsel also objected to a two-level enhancement based on the PSR's finding that Crane committed the offense as part of a pattern of criminal conduct engaged in as a livelihood.  (Doc. 96, p. 3)  Defense counsel did not object to the PSR on the basis that Crane received a three-level enhancement for being a manager or supervisor (of three others) in criminal activity involving five or more participants or which was otherwise extensive; nor was an objection made asserting that Crane should receive a mitigating role reduction under U.S.S.G. § 3B1.2.  Despite clarification of U.S.S.G. § 3B1.2 by Amendment 794, the factual basis for the aggravating role enhancement or a mitigating role reduction would have been known and available at the time of sentencing.  Crane was, therefore, clearly aware of the issue in time to pursue relief at sentencing and on direct appeal. He simply failed to do so.

Further, there is no assertion by Crane that some interference by Government officials, or some external impediment, prevented him from raising his claim on direct appeal.

Since Crane has not shown adequate cause to overcome the procedural bar in his case, the Court need not consider the issue of actual prejudice.  *Ashker v. Class*, 152 F.3d 863, 871 (8th Cir. 1998) (citing *Engle v. Isaac*, 456 U.S. 107, 134 n. 43, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982)). Additionally, Crane neither claims nor demonstrates miscarriage of justice through actual innocence. "Without any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim."  *Schlup v. Delo*, 513 U.S. 298, 316, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995).

Crane has failed to demonstrate "cause and prejudice" or a "miscarriage of justice" to overcome the procedural default of the Guidelines claim he now asserts, and his § 2255 motion should be dismissed with prejudice.

### C. Crane's Guidelines Claim is Not Cognizable Under § 2255

Crane alleges that he is entitled to relief under Amendment 794 to U.S.S.G. § 3B1.2.  (Doc. 165, pp. 4, 15-17)  His argument fails.

First, any belief by Crane that Amendment 794 would provide him relief is misplaced.  As more fully discussed below, rather than being entitled to a mitigating role reduction under § 3B1.2, the facts instead supported a three-level enhancement under § 3B1.1 for Crane's aggravating role in the offense as a manager or supervisor in extensive criminal activity involving more than five participants, as well as a two-level enhancement for committing the offense as part of a pattern of criminal conduct engaged in as a livelihood.  Under such circumstances, any argument based on Amendment 794 is plainly without merit.

Second, the United States Supreme Court has held, albeit in a decision under the former United States Parole Commission system, that post-sentencing changes in sentencing policy do not support a collateral attack on the original sentence under § 2255.  *See United States v. Addonizio*, 442 U.S. 178, 186-87, 99 S.Ct. 2235, 60 L.Ed.2d 805 (1979) (actions taken by Parole Commission subsequent to sentencing do not retroactively affect the validity of the final judgment itself, nor do they provide a basis for collaterally attacking the sentence).  *See also Burke v. United States*, 152 F.3d 1329, 1332 (11th Cir. 1998) (claim that the sentence imposed is contrary to a post-sentencing clarifying amendment is a non-constitutional issue that does not provide a basis for collateral relief in the absence of a complete miscarriage of justice); and, *United States v. Boman*, 25 Fed.Appx. 761,

762 (10th Cir. Dec. 5, 2001) ("It is doubtful that a post-sentencing clarifying amendment is a ground for collateral relief under § 2255.") As noted above, *United States v. Quintero-Leyva, supra*, confirmed that Amendment 794 was intended to be a clarifying amendment and applies retroactively only to cases on direct appeal.

Crane's claim based on Amendment 794 is simply not cognizable under § 2255.

### D.  Amendment 794 and Mitigating Role in the Offense

Crane recites the five factors set forth in Amendment 794 to U.S.S.G. § 3B1.2 and argues, in conclusory fashion, that "he meets all five (5) criteria, because [he] was only a 'runner' or 'mule' and was only being paid/compensated for his services in the offense consistent with Amendment 794 and § 3B1.2." (Doc. 165, p. 16)  If Crane overcame the procedural bars to enable the Court to consider the merits of his Guidelines claim, the record amply demonstrates that Crane was not entitled to a mitigating role adjustment at sentencing, and that the enhancements for specific offense characteristics and an aggravating role in the offense were properly applied.

Defense counsel objected to the two-level enhancement for committing the offense as part of a pattern of criminal conduct engaged in as a livelihood.  (Doc. 96, p. 3)  Defense counsel argued that Crane had been gainfully employed as a car salesman until sometime after 2009 when he developed issues with substance abuse; that Crane lived with a co-worker who was responsible for payment of daily expenses; and, Crane denied making a sufficient amount of money in drug-related sales to qualify as a "livelihood," contending instead that his earnings from his criminal activities were *de minimus*.  (*Id*.)  Notably, no argument was made that Crane was not a manager or supervisor in the drug conspiracy, nor that Crane was entitled to a mitigating role reduction pursuant to U.S.S.G. § 3B1.2.  Given the facts of record, no such arguments could reasonably have been made.

The facts set forth in the PSR tell the following story.

Around June 12, 2013, law enforcement agencies learned that Crane and numerous other individuals were involved in a drug conspiracy.  (Doc. 108, ¶ 19)  On August 27, 2013, Crane met with a  an undercover investigator (UC) and a confidential source (CS), and they discussed future drug transactions; specifically, Crane told the CS he would like to sell half-pound quantities of methamphetamine to the UC, and Crane attempted to recruit the CS to travel to Arizona to pick up 15 pounds of methamphetamine in exchange for $4,000 (the CS declined).  (Doc. 108, ¶ 21)  On October 30, 2013, investigators reviewed Crane's Bank of America checking account for records of deposit.  Between September 17, 2012 and September 17, 2013, the account received $50,055.64 in deposits, and there were no regular payroll checks being deposited into the account.  (Doc. 108, ¶ 24)

On November 6, 2013, investigators observed Crane meeting with Ernesto Romo (a Co-Defendant in Case No. 3:14-cr-30017) (Doc. 108, p. 2), in a Waffle House parking lot.  Crane and Romo were followed to a hotel in Springfield, Missouri, where they were seen exchanging items, including shoe boxes.  On this same date, investigators executed a search warrant on Crane's hotel room.  Several ounces of methamphetamine were found in Crane's hotel room and he was arrested.  (Doc. 108, ¶ 26) Following his arrest, Crane participated in several post-Miranda interviews.  Crane said he had been getting an average of one pound of methamphetamine from two different sources every five to seven days for the past two years.  (Doc. 108, ¶¶ 27, 28)  Crane described being engaged in extensive drug trafficking activities since 2009.  (Doc. 108, ¶¶ 29-32, 37-42, 48-52, 61)  Crane's statements about his drug trafficking activities were corroborated by statements made by co-conspirators and others.  (Doc. 108, ¶¶ 34, 43-47, 56, 58-60)  Crane admitted he had three other

individuals deliver methamphetamine for him, transport methamphetamine for him, and pick up monies owed to him.  (Doc. 108, ¶ 62)

Aside from arguing that his drug trafficking activities did not "qualify as being engaged in as a livelihood" and only resulted in *de minimus* earnings (Doc. 96, p. 3), Crane did not object to the above-stated facts in the PSR.  "A fact in a PSR to which the defendant has not specifically objected is a fact admitted by the defendant."  *See United States v. Abrica-Sanchez*, 808 F.3d 330, 334 (8th Cir. 2015) (quoting *United States v. White*, 447 F.3d 1029, 1032 (8th Cir. 2006)).

Crane's drug trafficking activities is similarly summarized in the factual basis section of the Plea Agreement that Crane entered into.  (Doc. 75, ¶¶ 2(a)-(d))

Significant to the analysis of the present issue, Crane coordinated the distribution of large quantities of methamphetamine in Kansas, Missouri, and Arkansas.  Crane was the source of supply for several customers, and he had three other individuals performing drug trafficking activities for him.  The overall drug conspiracy involved more than five participants and was otherwise extensive.

Amendment 794 provided clarification of the factors a court is to consider in determining whether a defendant should receive a reduction under U.S.S.G. § 3B1.2 for being a minimal or minor participant in an offense.  Although Crane objected to the two-level enhancement for engaging in drug trafficking conduct as a livelihood, he did not object to the PSR for determining that he was a manager or supervisor in an extensive drug conspiracy, nor for failing to give him a mitigating role reduction.

The facts of record clearly support the conclusion that Crane was deeply involved in wide-ranging drug trafficking activities involving large quantities of methamphetamine and numerous participants.

*Application Note 2* to U.S.S.G. § 3B1.1 states that "[t]o qualify for an adjustment under this section, the defendant must have been the organizer, leader, manager, or supervisor of one or more other participants." Here, that is unquestionably true, as Crane had three other individuals perform drug trafficking activities for him, including the delivery of methamphetamine, transporting methamphetamine, and collecting monies owed to him.

*Application Note 4* to § 3B1.1 sets forth various factors a court should consider in determining whether to impose an enhancement for a defendant's aggravating role in an offense, and among those factors are: the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others. The uncontested facts set out in Crane's Plea Agreement and in the PSR establish the presence of many of these factors, including Crane's involvement in large scale drug trafficking activities in Kansas, Missouri, and Arkansas, his recruitment of others to transport methamphetamine into Arkansas, his involvement in the planning and organization of the drug trafficking activities, and his degree of control and authority over at least three other individuals in the offense conduct.

Based on the record, the Court's finding that Crane was subject to a three-level enhancement under U.S.S.G. § 3B1.1 as a manager or supervisor of criminal activity that involved five or more participants or was otherwise extensive was supported by substantial evidence. *See, e.g., United States v. Robertson*, 519 F.3d 452 (8th Cir. 2009) (leadership role affirmed where defendant exercised decision-making authority over both broad outline and specific details of scheme to transport more than 100 kilograms of marijuana from Arizona to Minnesota); *United States v. Rutter*,

897 F.2d 1558 (10th Cir. 1990) (evidence that defendant had recruited person to be "mule" to supply additional cocaine supported enhancement for aggravating role); *United States v. Bonilla-Filomeno*, 579 F.3d 582 (8th Cir. 2009) (two-level enhancement upheld where defendant recruited two co-conspirators to assist in picking up vehicle, coordinated the pick up, offered one co-conspirator $300 to sign for the vehicle, and cocaine was hidden in the vehicle); *United States v. Maejia*, 928 F.2d 810 (8th Cir. 1991) (enhancement as organizer affirmed where defendant hired one individual to drive truck containing cocaine, controlled movements of truck, paid truck driver $2,000 for two days of service, and defendant had been under investigation for extensive high-volume cocaine trafficking); and, *United States v. Cole*, 657 F.3d 685 (8th Cir. 2011) (three-level enhancement affirmed where defendant directed and controlled one other individual as part of the conspiracy, defendant handled large quantities of drugs and money, and defendant transported and/or directed the transportation of drugs).

Accordingly, even if the Court were to address the merits of Crane's argument that he should have received a mitigating role reduction pursuant to Amendment 794 of U.S.S.G. § 3B1.2, the argument lacks support in the record and must be rejected.

### E.  No Entitlement to Relief Under 18 U.S.C. § 3582

If the Court were to liberally construe Crane's § 2255 motion as a motion for sentence reduction under 18 U.S.C. § 3582, Crane is not entitled to relief.

A district court is authorized to modify a Defendant's sentence only in specified instances where Congress has expressly granted the court jurisdiction to do so.  *See United States v. Blackwell*, 81 F.3d 945, 947 (10th Cir. 1996), citing *United States v. Caterino,* 29 F.3d 1390, 1394 (9th Cir. 1994) (authority to change a sentence must derive from some federal statutory authority).  18 U.S.C.

§ 3582(c) provides that a court may not modify a term of imprisonment once it has been imposed, with three exceptions. A court may modify a sentence: (1) in certain circumstances "upon motion of the Director of the Bureau of Prisons," *see* 18 U.S.C. § 3582(c)(1)(A); or, (2) "to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure," *see* 18 U.S.C. § 3582(c)(1)(B); or, (3) "upon motion of the defendant or the Director of the Bureau of Prisons," or on a court's own motion, in cases where the applicable sentencing range "has subsequently been lowered by the Sentencing Commission," *see* 18 U.S.C. § 3582(c)(2). Crane neither claims nor establishes that any of these exceptions have application to his case.

### F.  No Evidentiary Hearing Is Warranted

A movant is not entitled to an evidentiary hearing on a § 2255 motion if "the motion and the files and records of the case conclusively show that the [movant] is entitled to no relief." *Nguyen v. United States*, 114 F.3d 699, 703 (8th Cir. 1997), quoting from *Voytik v. United States*, 778 F.2d 1306, 1308 (8th Cir. 1985). Such are the circumstances in this case where Crane has alleged insufficient factual and legal support for his claim. Accordingly, the undersigned recommends the summary dismissal of Crane's § 2255 motion without an evidentiary hearing.

### III.  Conclusion

For the reasons and upon the authorities discussed above, Crane's claim has been procedurally defaulted and is otherwise wholly unsupported by the record in this case. I recommend that Crane's Motion Under 28 U.S.C. § 2255 (Doc. 165) be **DISMISSED with PREJUDICE**.

**The parties have fourteen (14) days from receipt of this Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely written objections may result in waiver of the right to appeal questions of fact. The parties are**

**reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 30th day of January, 2017.

/s/ Mark E. Ford

HONORABLE MARK E. FORD
UNITED STATES MAGISTRATE JUDGE